SO ORDERED: November 10, 2008.

_____
**Basil H. Lorch III**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Gabor Spruch and | ) | Case No. 08-90239-BHL-13 |
| Sherrie A. Spruch, | ) | |
| | ) | |
| Debtors. | ) | |

## ORDER

This matter comes before the Court on the **Objection to Confirmation of Chapter 13 Plan** filed on March 28, 2008, by FIA Card Services a/k/a Bank of America by eCAST Settlement Corporation, as its agent and eCAST Settlement Corporation, assignee of GE Money Bank/Dillard's and JC Penney Consumer (collectively hereinafter "eCAST"). Gabor and Sherrie Spruch (hereinafter "Spruchs") filed their **Brief in Opposition to Objection of eCAST Settlement Corporation** on May 30, 2008, and filed Additional Authority in Support of their reply on June 10, 2008. A joint **Stipulation of Facts** was filed by the parties on June 30, 2008, and the matter was fully briefed with the filing of a **Brief in Support of Objection to Confirmation of Chapter 13 Plan** on July 11, 2008. The parties stipulate to the following:

**FACTS**

1. On February 1, 2008, the Spruchs filed their petition for chapter 13 bankruptcy relief;

2. The Spruchs have income which is above median, and were therefore required to fully complete Form B22C, known as the "Means Test";

3. Gabor Spruch is a licensed Chiropractor, and the Spruchs were engaged in the operation of a Chiropractic business at the time they filed the instant bankruptcy;

4. Line item 11 of Form B22C filed by the Spruchs showed total "current monthly income" of $14,785.47, and deductions of $16,096.48 at line item 56, thus generating a negative Monthly Disposable Income of $1,311.01 at line item 59;

5. On Schedule "I" of the Debtors' Petition, the Spruchs listed sources of income as follows:

| Debtor Husband's monthly income | $1,885.43 |
| Debtor Wife's monthly income | $1,885.43 |
| Regular income from business | $11,014.61 |
| $2,000 of "Other monthly income" at line item 13 | $2,000.00 |
| **TOTAL** | **$16,785.47** |

6. The Debtors' income, from Schedule "I" matched exactly with the income from Form B22C, with the exception of the $2,000 "Other monthly income" at line item 13 of Schedule "I" which included the following income qualifying language:

> *"Debtors are closing out All Care Chiropractic, LLC, and will then continue operation of their Chiropractic business either as individuals in business, or as a new LLC. The Trustee will be updated as this decision is finalized. Debtors anticipate cutting their business, and other costs, by surrendering one lease vehicle, replacing it with a less expensive vehicle, and by cutting business costs by $1,800 to $2,000 per month. Reducing such costs should allow the Debtors to generate additional funds of $1,800 to $2,000 to support this Chapter 13 Plan."*

2

7. The Spruchs, since the filing of their Plan, have not had additional income and have funded their Plan by cutting expenses as stated in the qualifying language set forth in line item 13 of Schedule "I";

8. The Spruchs' Plan proposes to pay the Chapter 13 Trustee $1,900.00 per month for sixty (60) months, yielding no distribution at all to general unsecured creditors. From the base plan of $114,000.00, Trustee's fees of no more than 10%, or $11,400.00, will be paid and the following will be distributed: attorney's fees of $5,000.00, priority tax debt of $65,268.51, $31,131.00 for business equipment, and approximately $1,200.49 to general unsecured creditors whose debts total $275,291.10 (Schedule "F")(as estimated by eCAST);

9. At some point during the pendency of this Chapter 13 Bankruptcy case, the Debtors surrendered a 2006 Hummer vehicle;

10. At some point during the pendency of this case, the Debtor Wife's father assisted the Debtors in obtaining the use of a second vehicle at an approximate cost of $350.00 per month, exclusive of the costs of maintenance and insurance, which is also maintained by the Debtors;

11. Because the Spruchs have replaced the 2006 Hummer with a vehicle at about the same monthly cost, eCAST does not intend to pursue issues related to the surrendered Hummer or the replacement vehicle;

12. The Spruchs continue to lease a second 2006 Hummer vehicle at a monthly expense of $1,000.00 according to Schedule "J";

13. Line 47(e) of Form B22C reports a monthly expense of $58.25 for the retention of a "Hilton Grand Vacation" timeshare in Orlando, Florida; however, the Spruchs do not show an expense for this timeshare in Schedule "J";

14. eCAST timely filed an Objection to Confirmation of the Debtors' Chapter 13 Plan on March 28, 2008;

15. eCAST timely filed four (4) proofs of claim in the Debtors' Chapter 13 Bankruptcy in the total amount of $43,570.10, representing approximately 15% of the Debtors' unsecured debt as reported on Schedule "F";

16. eCAST's claims are based upon Debtors' use of credit cards issued by FIA Card Services a/k/a Bank of America, GE Money Bank/Dillard's and JC Penney Consumer.

## DISCUSSION

The issues presented to the Court by eCAST, in its Objection to Confirmation, are whether the Spruchs have failed to apply all of their "projected disposable income" to unsecured debt under section 1325(b), and whether they have proposed their Chapter 13 Plan in good faith under 11 U.S.C. §§ 1325(a)(3) and (a)(7).

**I.  How is a debtor's "projected disposable income" determined for purposes of 11 U.S.C. §1325(b)(1)(B)?**

The essential question put forth by eCAST is whether the disposable income for an above-median income debtor is determined based on Form B22C or on Schedules I and J. This is not the first time that eCAST has "surveyed" this Court on that issue and it was, in fact, recently asked and answered. *See, In re Hedge*, Case No. 07-92511-BHL-13 (Order of September 17, 2008). In that case, the Court concluded that Form B22C, otherwise known as the means test, is the exclusive gauge for determining projected disposable income. Thus, for reasons stated therein, this Court continues to hold that "projected disposable income" must be calculated using the debtor's "disposable income," as defined in §1325(b)(2) and subtracting the standard expenses of § 707(b)(2)(A) and (B), projected over the applicable commitment period.

4

eCAST argues that the Spruchs have overstated their expenses in regard to two particular items: a monthly entertainment expense of $58.25 for a vacation timeshare and an ownership expense for their second vehicle.[1] eCAST also asserts that the Spruchs have improperly calculated income by excluding $2000 in "reduced" business expenses otherwise listed as "Other Monthly Income" on Schedule I. Because the Debtors have a negative disposable income and based upon this Court's finding that the means test is the exclusive method for determining projected disposable income for above-median income debtors, the only way that any of the foregoing issues will be pertinent is if they shift the Debtors' means test calculation, specifically, the Debtors' disposable income from a negative to a positive figure.

In that regard, even if the Court were to agree with eCAST and hold that both the entertainment expense and the transportation expense were improper, the Debtors would still have negative projected disposable income. In *In re Anderson*, 2008 WL 748416 (Bankr.S.D.Ohio), eCAST proffered similar arguments. In a rather lengthy decision, Judge Humphrey first addressed the propriety of including debt on collateral being surrendered:

> Pursuant to § 1325(b)(3), the expenses of § 707(b)(2) are used for above median family income Chapter 13 debtors. Accordingly, since the language of § 707(b)(2)(A)(iii)(I) is used to determine an above median family income debtor's secured debt expense in Chapter 13, the court holds that contractually incurred secured debt scheduled on Schedule D relating to collateral being surrendered under a Chapter 13 plan may be deducted under § 707(b)(2)(A)(iii)(I) in calculating disposable income.

*Id.* at *6. Then, in a footnote, the Court made reference to eCAST's contention that the subject items being surrendered could be classified as "luxury goods" in that they do not appear to be

---

[1] Although the Objection specifically refers to the expense related to the surrendered vehicle, the parties stipulated that the expense of the second vehicle was no longer in dispute. (See Facts, No. 11)

necessary to the sustenance of the Debtors and their dependents:

> The court notes that there may be circumstances under which a debtor's inclusion of secured debt relating to collateral being surrendered, particularly relating to luxury goods rise to a level to raise "good faith" issues under § 1325(a)(3); however, eCast has not raised that issue.

*Id.* In that case, the Court held that the "netting" process utilized by the debtors, through which the secured debt expense is subtracted from the local Standard ownership expense, was the most consistent with a holistic reading of the statutory allowed expenses in section 707(b)(2)(A). In this case, although the original vehicle was surrendered, it has subsequently been replaced by another vehicle, and thus eCAST does not complain inasmuch as the debtor continues to incur transportation expenses.

As for the Debtors' interest in a Hilton Grand Vacation timeshare in Orlando, Florida, eCAST asserts that the deduction is not a reasonably necessary expense under section 707(b)(2)(A)(ii)(I). Again, the Court in *Anderson*, in resolving that question states:

> eCast also argues that the reasonably necessary standard should still apply for expenses for above median family income debtors. The court finds it clear that Congress rejected the more amorphous "reasonably necessary" standard for above median family income debtors. 11 U.S.C. § 1325(b)(3). The court finds no absurdity here, and, absent the unusual circumstance of absurdity or a clear scrivener error, the court will apply the statute as it was written, not as it could have been written.

*Id.* at *8. Although the *Anderson* case is not alone in its conclusion, *see, e.g., In re Farrar-Johnson*, 353 B.R. 224 (Bankr.N.D. Ill 2006) (citing *In re Barr,* 341 B.R. 181 at 186 (Bankr.M.D.N.C. 2006); *In re Alexander*, 344 B.R. 742 (Bankr.E.D.N.C. 2006), and *see*, 8 Alan N. Resnick & Henry J. Sommer, eds., *Collier on Bankruptcy* ¶ 1325.08[5][c][I] at 1325-65 (15th ed. Rev. 2006) (noting that section 1325 (b)(3) "permits debtors to deduct amounts allowed by the chapter 7 means test, even if they seem excessive to a trustee or creditor")), this Court is not prepared to hold that the

6

"reasonably necessary" requirement has been abdicated. It need not make that determination.

Assuming *arguendo* that eCAST is correct and the Debtors are not entitled to take either the transportation expense or the entertainment expense, the means test calculation still results in no projected disposable income. Furthermore, the Court finds no basis for holding that the Spruchs should have included $2000 as projected future income when, in actuality, they anticipate generating that so-called "income" by reducing costs. As a practical matter, the Spruchs' income has not increased since the filing of their petition. The Spruchs listed the same figure for monthly gross wages, salary, and commissions on Line 1 of Schedule I as is reported on Line 2 of Form B22C.

The Spruchs protest that it is hardly an incentive to the "honest but unfortunate" debtor to try to streamline operations by reducing costs if such maneuvers will result in demands from unsecured creditors for dollar-for-dollar increases in plan payments. Again, however, this issue is resolved by virtue of the Court's holding that the means test is the exclusive test for determining projected disposable income. Although a recent 8th Circuit decision would tend to disagree, *see, In re Frederickson*, (October 27, 2008), this Court continues to view the 9th Circuit's decision in *Kagenveama*, 541 F.3d 868 (2008) as the better reasoned course.

## II.     Good faith under 11 U.S.C. §§ 1325(a)(3) and (a)(7).

The basis of eCAST's good faith argument lies within the fact that the Debtors are above median income, lease a 2006 Hummer, own a timeshare, and aren't making any payment on their unsecured debt. In *In re Williams*, 394 B.R. 550 (Bankr.D.Co. 2008), the Court considered similar arguments. In a comprehensive discussion regarding the essence of the good faith analysis post-BAPCPA, the Court identified both ends of the spectrum before settling on the intermediate approach, whereby it held that compliance with section 1325(b) precludes a good faith challenge

7

under 1325(a)(3) based on ability to pay except in cases of manipulation, subterfuge, or unfair exploitation of the Code by the debtor. *Id.* at 572. That court held as follows:

> Thus, the primary measure of whether the debtor has committed sufficient income to the plan is the PDI analysis of § 1325(b). This means that, in the majority of cases, a debtor need not commit any more funds to pay unsecured creditors than is required by § 1325(b)(1) in order for the plan to be filed in good faith. But the passage of BAPCPA did not wholly eliminate consideration of a debtor's ability to pay in the context of a good faith analysis under § 1325(a)(3). . . . Unfortunately, good faith will always remain a subjective test. But it should be used only to ferret out those debtors 'engaging in subterfuge so blatant as to indicate that they have 'unfairly manipulated the Bankruptcy Code, or otherwise proposed [their] [c]hapter 13 plan in [such] an inequitable manner' [that they] will run afoul of § 1325(a)(3). Thus, the best guidance this Court can offer is the old adage of 'pigs get fat, but hogs get slaughtered.'

*Id.* at 572-573. In the case at bar, it can fairly be said that the Debtors list secured debt for luxury goods. The Debtors lease a 2006 Hummer at $1000/month and include a monthly payment of $58 for a vacation timeshare. While those factors give the Court pause, the real issue is whether there has been an "unfair manipulation" of the Bankruptcy Code by the Debtors.

The retention of the timeshare, at a monthly cost of $58, for a family of four, is not what this Court would deem a particularly extravagant entertainment expense. However, luxury vehicles such as Hummers are stereotypical icons of American affluence. When such icons are possessed by a Debtor unable to pay his legitimate debts, it certainly has a tendency to raise one's doubts as to whether the Debtor is dealing with his creditors in good faith. Should the mere possession of such a vehicle constitute a "badge" of bad faith as suggested by eCAST?

These Debtors run a marginally profitable chiropractic business but have significant tax debt, mortgage debt, as well as unsecured debt. Prior to filing bankruptcy, the Debtors were living a moderately affluent lifestyle as their income, absent undue expenses, would perhaps seem to support. However, the Debtors were living beyond their means, they were not paying their taxes,

and were thus forced to file bankruptcy leaving them to deal with the accouterments of wealth. At that point, the Debtors were able to surrender one Hummer and replace that vehicle only with the financial support of the Debtor's father. However, even if the Debtors wanted to surrender the remaining Hummer, they are not in a position to finance another vehicle. Furthermore, as pointed out by Debtors' counsel, although the Debtors listed the Hummer lease payment of $1000 per month for 30 months on Schedule J, they included only the allowed ownership deduction on Form B22C or approximately $500 per month for 60 months. It is doubtful that the Debtors could have replaced the Hummer and secured much of a financial advantage over the course of a five year plan.

      The Debtors' Schedules I and J reveal a monthly net income of $1900. The Debtors have proposed to pay $1900 per month for 60 months, thus paying a significant amount of priority tax debt and secured debt but virtually no unsecured debt. According to the means test calculation, however, the Debtors have no projected disposable income. Considering all of the circumstances as set forth hereinabove, the Court finds that the Debtors have complied with the mandates of the Bankruptcy Code and have proposed a Chapter 13 plan commensurate with their ability to fund such a plan. The Objection to Confirmation filed by eCAST is, accordingly, overruled.

**SO ORDERED.**

# # #

Distribution to all counsel of record.